## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                       )
SAFARI CLUB INTERNATIONAL, *et al.*,   )
                                       )
                    Plaintiffs,        )
                                       )
          v.                           )          Civil Action No. 14-0670 (ABJ)
                                       )
SALLY M. R. JEWELL, in her official    )
capacity as Secretary of the U.S.      )
Department of the Interior, *et al.*,  )
                                       )
                    Defendants.        )
_____)

## MEMORANDUM OPINION

Plaintiffs Safari Club International and the National Rifle Association challenge two determinations issued by the United States Fish and Wildlife Service ("the Service") that suspended the importation of elephant trophies of sport-hunted elephants from Tanzania and Zimbabwe in 2014. Am. Compl. [Dkt. # 13]. Plaintiffs contend that the Service's determinations violate the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"). Pending before the Court are defendants' motion to dismiss, [Dkt. # 11] ("Mot. to Dismiss"), and supplemental motion to dismiss, [Dkt. # 36] ("Suppl. Mot. to Dismiss"), and plaintiffs' motion for leave to file a second amended and supplemented complaint, [Dkt. # 34] ("Mot. to Amend"). The Court will grant defendants' motion to dismiss the Tanzania claims for failure to state a claim, deny the motion to dismiss the Zimbabwe claims, and grant plaintiffs' motion for leave to file a second amended complaint.

## BACKGROUND

I.    **Legal Framework**

The importation of sport-hunted African elephants into the United States is governed by both international convention and U.S. law.

A.    **The Convention on International Trade in Endangered Species of Wild Fauna and Flora**

International trade in African elephants and other protect wildlife is governed by the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"). 27 U.S.T. 1087; T.I.A.S. 8249, Mar. 3, 1973.  This treaty, which establishes requirements for importing and exporting covered species, categorizes species into three appendices, depending on the level of protection each species requires.  Relevant here, Appendix I includes species threatened with extinction, and Appendix II includes species for which trade is controlled to avoid trade incompatible with the species' survival.  African elephants from Tanzania fall under Appendix I, while African elephants from Zimbabwe fall under Appendix II.[1]

The treaty requires signatory states to establish a "Scientific Authority" and a "Management Authority" to make a variety of determinations regarding the propriety of importing and exporting covered species. CITES Art. IX.  Before a country may allow the importation of a species on Appendix I, its Scientific Authority must determine, among other things, that "the import will be for purposes which are not detrimental to the survival of the species" – sometimes referred to as a "non-detriment advice."  CITES, Art. III (3); Am. Compl. ¶ 33.  Previously pursuant to CITES Res. Conf. 2.11. (Annex 1), each country's Management Authority was required to make a determination that importing a species on CITES' Appendix I

---

1    The African elephant (Loxodonta Africana) is listed under Appendix I of CITES, except the populations of Botswana, Namibia, South Africa, and Zimbabwe, which are included in Appendix II.  Am. Compl. ¶¶ 30–31.

would enhance the survival of the species – sometimes referred to as an "enhancement finding." Am. Compl. ¶¶ 34, 77–78, citing 57 Fed. Reg. 35473, 35485 (Aug. 10, 1992); Res. Conf. 2.11. (Annex 1). The treaty no longer imposes this enhancement finding requirement, but some countries, including the United States, maintain the requirement as part of their domestic law. *See* Am. Compl. ¶¶ 78–79.

### B. The Endangered Species Act

The United States has implemented the CITES treaty through the ESA. 16 U.S.C. §§ 1537a; 1538(c). The Fish and Wildlife Service's Division of Scientific Authority is responsible for issuing non-detriment advices as required by CITES. Decl. of Rosemarie S. Gnam, Ex. 2 to Mot. to Dismiss [Dkt. # 11-2] ¶ 1; *see also* Am. Compl. ¶ 36. The Service's Division of Management Authority is responsible for issuing CITES permits and making enhancement findings as formerly required by CITES and still required by the ESA. Decl. of Timothy Van Norman, Ex. 1 to Mot. to Dismiss [Dkt. # 11-1] ¶¶ 1–2.

Separately, the African elephant is listed as a threatened species under the ESA, and receives protections established by that statute. 43 Fed. Reg. 20499 (May 12, 1978); 50 C.F.R. §17.11(h). Among them, the ESA prohibits the importation of endangered species, and it authorizes the Service to extend that same prohibition to threatened species, like the African elephant, *see* 16 U.S.C. §§ 1538(a)(1), 1533, unless the Service has issued a special rule governing the threatened species, 50 C.F.R. § 17.31. Pursuant to that authority, the Service has issued a special rule governing African elephants. 43 Fed. Reg. 20499, 20502 (May 12, 1978); 47 Fed. Reg. 31384 (July 20, 1982); 57 Fed. Reg. 35473 (Aug. 10, 1992). The special rule allows the importation of sport-hunted African elephants into the United States if a number of conditions are met, including that the Division of Management Authority has made an

enhancement finding for the country from which the elephant is being imported.  50 C.F.R. § 17.40(e)(3)(iii)(C).

### C.      Regulatory Requirements for Importing Sport-Hunted African Elephants

Because African elephants from Tanzania are on CITES Appendix I, hunters must obtain import permits to import sport-hunted elephants from that country.  CITES Art. III(3).  The Service has combined the application for a CITES non-detriment advice and an ESA enhancement finding into a single import permit application, which the Service's Division of Management Authority considers on a case-by-case basis.  Defs.' Mem. in Support of Mot. to Dismiss [Dkt. # 11] ("Defs.' Mem.") at 5; Van Norman Decl. ¶¶ 13, 21.

Because African elephants from Zimbabwe are on CITES Appendix II, hunters are not required obtain import permits to import sport-hunted elephants from that country.  CITES Art. IV(2); *see also* 62 Fed. Reg. 44627, 44633 (Aug. 22, 1997) (stating that "an import permit will no longer be required for non-commercial imports of African elephant sport-hunted trophies from [Botswana, Namibia, and Zimbabwe] only").  An enhancement finding is still required under the ESA, however, before sport-hunted elephants from Zimbabwe may be imported into the United States.  50 C.F.R. § 17.40(e)(3)(iii)(C).  These enhancement findings are made on a country-by-country basis.  Defs.' Mem. at 4, citing Van Norman Decl. ¶¶ 2–3.

## II.      The Challenged Determinations

Until 2014, imports of legally sport-hunted African elephants from Tanzania and Zimbabwe had been allowed into the United States.  The Division of Scientific Authority had issued non-detriment advices for African elephants from Tanzania and Zimbabwe since at least 1993, and the Division of Management Authority had made enhancement findings for sport-hunted African elephants from both countries since at least 1993.  Am. Compl. ¶ 37, citing 60 Fed. Reg. 12969, 12969–70 (Mar. 9, 1995); Am. Compl. ¶ 80.  That changed on April 4, 2014,

when the Service announced determinations suspending importations of legally sport-hunted

African elephant trophies from Tanzania and Zimbabwe for the remainder of 2014.

### A.     The Tanzania Non-Detriment Advice and Enhancement Finding

On February 21, 2014, the Service's Division of Scientific Authority issued a

memorandum stating that it could not make a non-detriment advice for imports of sport-hunted

elephants from Tanzania.  General Advice on Importation of Sport-hunted Trophies of African

Elephants taken in Tanzania in the Calendar Year 2014, Ex. I to Mot. for Prelim. Inj. [Dkt. #

4-13] ("Tanzania Advice") (explaining that the finding was based on increased poaching in and a

significant decline in elephant populations in Tanzania).  This memorandum was provided to the

Division of Management Authority.  *Id.*

On March 27, 2014, the Division of Management Authority issued a finding that the

importation of sport-hunting trophies from Tanzania is not likely to enhance the survival of the

species.  Enhancement Finding for African Elephants Taken as Sport-hunted Trophies in

Tanzania during 2014, March 27, 2014, Ex. J. to Mot. for Prelim. Inj. [Dkt. # 4-14].

Despite these determinations, the agency continues to accept permit applications:

> If permit applications are received that include new or additional
> information showing that elephant management practices by the
> Government of Tanzania have led to the sustainability of its elephant
> population on a nation-wide basis, these applications should be referred to
> the Division of Scientific Authority for consideration on a case-by-case
> basis.

Tanzania Advice at 1.

On April 4, 2014, the Service announced the suspension of imports of sport-hunted

African elephant trophies from Tanzania during the 2014 calendar year.  Press Release:  Service

Suspends Import of Elephant Trophies from Tanzania and Zimbabwe, Ex. A to Mot. for Prelim.

Inj. [Dkt. # 4-5] ("Press Release").  Also on April 4, 2014, the Service denied the first import

permit applications for sport-hunted African elephants to be hunted in Tanzania later in 2014. Van Norman Decl. ¶¶ 14–15.

    **B.**    **The Zimbabwe Enhancement Findings**

    On April 4, 2014, the Service issued an interim enhancement finding for elephants from Zimbabwe, which stated that the Service was "unable to find that the killing of an elephant in Zimbabwe during the 2014 hunting season for the purpose of importing into the United States will enhance the survival of the species." Memorandum: Enhancement Finding for African Elephants Taken as Sport-hunted Trophies in Zimbabwe during 2014, Ex. D to Mot. for Prelim. Inj. [Dkt. # 4-8] at 1 (emphasis omitted). It announced the suspension of imports of sport-hunted African elephant trophies from Zimbabwe as part of the press release it issued on that date. Press Release. In May 2014, it published a notice of the interim finding in the Federal Register. 79 Fed. Reg. 26986 (May 12, 2014). In July 2014, the Service announced a final enhancement finding, confirming that it was unable issue a positive finding for Zimbabwe. 79 Fed. Reg. 44459 (July 31, 2014); Defs.' Notice [Dkt. # 33] (notifying the Court of the Service's publication of its final finding on sport-hunted elephants from Zimbabwe).

## PROCEDURAL HISTORY

    Plaintiff Safari Club International filed suit on April 21, 2014 challenging the Service's Tanzania determinations and Zimbabwe interim enhancement finding. Compl. On April 30, 2014, it filed a motion for a preliminary injunction. Mot. for Prelim. Inj. [Dkt. # 4]. The Court ordered the parties to brief only the issues of irreparable harm and subject matter jurisdiction. Minute Order of May 2, 2014; *see* Defs.' Opp. to Mot. for Prelim. Inj. [Dkt. # 10]/Mot. to Dismiss [Dkt. # 11]; Pl.'s Reply for Prelim. Inj. [Dkt. # 14]; Defs.' Surreply for Prelim. Inj. [Dkt.

# 19].[2]  The parties then filed their opposition and reply briefs to defendants' motion to dismiss. Pls.' Opp. to Mot. to Dismiss [Dkt. # 22]; Defs.' Reply in Support of Mot. to Dismiss [Dkt. # 23] ("Defs.' Reply for Mot. to Dismiss").  On June 6, 2014, the Court denied the motion for preliminary injunction.  Mem. Op. and Order [Dkt. # 24].[3]

Following that ruling, the Court ordered the parties to file supplemental briefs on the motion to dismiss.  Minute Order, June 16, 2014.  On August 8, 2014, defendants filed a supplemental motion to dismiss, moving to dismiss on grounds for failure to state a claim under Rule 12(b)(6).  Suppl. Mot. to Dismiss.

On August 1, 2014, plaintiffs filed a motion for leave to file a second amended complaint to add claims regarding the Service's announcement on July 23, 2104 that it issued a final enhancement finding on sport-hunted elephants from Zimbabwe.  Mot. to Amend.

The parties filed combined briefs, addressing both defendants' supplemental motion to dismiss and plaintiffs' motion to amend.  *See* Suppl. Mot to Dismiss [Dkt. # 36]/Partial Opp. to Mot to Amend. [Dkt. # 37]; Pls.' Opp. to Suppl. Mot. to Dismiss [Dkt. # 40]/Reply for Mot. to Amend. [Dkt. # 41] ("Pls.' Suppl. Opp."); Defs.' Reply for Suppl. Mot. to Dismiss and Partial Opp. to Motion to Amend [Dkt. # 42].  The Court heard oral argument on the pending motions on November 18, 2014.[4]

---

2       On May 16, 2014, plaintiff filed an amended complaint, which added the National Rifle Association as a plaintiff but made no substantive amendments.  Am. Compl.

3       Plaintiffs appealed the order on the motion for preliminary injunction, Not. of Appeal [Dkt. # 29], but subsequently dismissed the appeal.  *See* Order, *Safari Club Int'l v. Jewell*, D.C. Cir., No. 14-5151, Nov. 7, 2014, Per Curiam (granting unopposed motion to voluntarily dismiss appeal).

4       On November 17, 2014, this case was reassigned from Judge Amy Berman Jackson to Judge Royce C. Lamberth.  Reassignment [Dkt. # 44].

**STANDARD OF REVIEW**

## I.      Motion to Amend

According to Federal Rule of Civil Procedure 15(a)(2), the Court should "freely give leave [to amend] when justice so requires."  The decision to grant leave to file an amended pleading is at the discretion of the Court.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Such leave is appropriate "in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  *Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II.     Motion to Dismiss

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted); *see also Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

### A.      Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002).  Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin,

and end, with an examination of our jurisdiction.").  "[B]ecause subject-matter jurisdiction is 'an

Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-

matter jurisdiction upon a federal court.'"  *Akinseye v. District of Columbia*, 339 F.3d 970, 971

(D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.

694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a

motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the

complaint."  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other

grounds*, 482 U.S. 64 (1987).  Rather, "a court may consider such materials outside the pleadings

as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."

*Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert

v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharm.*, *Inc.

v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

### B.      Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in

*Twombly*:  "First, the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a

plausible claim for relief survives a motion to dismiss."  *Id*. at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 566.

A pleading must offer more than "'labels and conclusions'" or a "'formulaic recitation of the

elements of a cause of action,'" *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.*

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed

liberally in the plaintiff's favor, and the Court should grant the plaintiff "the benefit of all

inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by the

plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court

accept plaintiff's legal conclusions.  *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242

(D.C. Cir. 2002).  In ruling upon a motion to dismiss for failure to state a claim, a court may

ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or

incorporated by reference in the complaint, and matters about which the Court may take judicial

notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## ANALYSIS

### I.      The Court Will Grant Plaintiffs' Motion to Amend the Complaint

Plaintiffs move for leave to file a second amended complaint to add claims challenging

the July 2014 final enhancement finding for Zimbabwe.  Mot. to Amend.  In response,

defendants stated that they do not object to the proposed amendment to add a challenge to the

merits of the July 2014 Zimbabwe finding.  Suppl. Mot. to Dismiss at 3, n.3.  They stated that the

arguments in their motions to dismiss apply to plaintiffs' original claims to the April 4, 2014

finding as to Zimbabwe, and they oppose the amendment to the extent plaintiffs maintain their

Tanzania claims on the grounds of futility.  *Id.* at 2–3 and n.2.

Federal Rule of Civil Procedure 15 provides that a district court "shall freely give[ ] leave to amend the pleadings under Rule 15(a) when justice requires." *Harris v. Secretary, U.S. Dep't of Veterans Affairs,* 126 F.3d 339, 345 (D.C. Cir. 1997). The Court makes this determination "on a case by case basis." *Id.* at 344. The "grant or denial of an opportunity to amend is within the discretion of the District Court," although the refusal to grant the leave without any justifying reason appearing for the denial is an abuse of discretion. *Foman v. Davis,* 371 U.S. at 182.

A court may deny a motion to amend the complaint as futile when the proposed complaint would not survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002); *Ruffalo v. Oppenheimer & Co.,* 987 F.2d 129, 131–32 (2d Cir. 1993) (holding that leave to amend was properly denied on futility grounds since new pleading failed to allege any additional significant facts). *See also 3 Moore's Federal Practice*, § 15.15[3] (Matthew Bender 3d ed. 2000) ("An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."). Defendants urge the Court to deny the motion to amend as to the Tanzania claims and certain of the Zimbabwe claims because amendment would be futile since they cannot survive a motion to dismiss. Suppl. Mot. to Dismiss at 3.

Given that the parties have fully briefed and argued defendants' motions to dismiss both the first amended complaint and the proposed second amended complaint, the Court will grant plaintiffs' motion to amend and considers defendants' futility arguments in the context of the pending motions to dismiss.

## II.     Motions to Dismiss

As explained above, the regulatory requirements for importing sport-hunted elephants from Tanzania differ from those for importing from Zimbabwe, and defendants' asserted

grounds for dismissal differ with respect to each.  Accordingly, the Court will address the arguments and rule on the applicable counts separately.

### A.    The Court will Grant the Motion to Dismiss the Tanzania Claims for Failure to State a Claim.

Defendants assert various grounds for dismissing plaintiffs' Tanzaniza claims.  They move to dismiss based on Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because, they assert, plaintiffs have no standing:  none of plaintiffs' declarant-members has applied for an import permit and the injury plaintiffs claim is not redressable by the Court.  Defs.' Mem. at 9–15.  They also move to dismiss on Federal Rule of Civil Procedure 12(b)(6) grounds for failure to state a claim:  the Tanzania finding is not final agency action because plaintiffs have not exhausted their administrative remedies by not applying for an import permit.  Suppl. Mot. to Dismiss at 4–7.  Thus, the key factual predicate underpinning both grounds for dismissal is that no plaintiff has applied for or been denied a permit to import a sport-hunted elephant from Tanzania for the relevant period.

Section 704 of the APA provides for judicial review of "final agency action."  5 U.S.C. § 704; *see also Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006) (holding that a court may not review a non-final agency action); *Hall v. Sebelius,* 689 F. Supp. 2d 10, 19 (D.D.C. 2009) (noting that a non-final agency action is not subject to judicial review under the APA).  An agency's action is final if it 1) "marks the consummation of the agency's decision making process" and 2) affects the "rights or obligations . . . [or the] legal consequences" of the party seeking review.  *Bennett v. Spear,* 520 U.S. 154, 177–78 (1997); *Domestic Secs. v. SEC,* 333 F.3d 239, 246 (D.C. Cir. 2003); *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. July 11, 2014) (citing *Bennett v. Spear,* 520 U.S. at 177–78).

Defendants assert that the Tanzania advice and finding are not final agency action because they are not the consummation of the agency's decision making process:  to import sport-hunted elephants from Tanzania, a hunter must apply for and obtain an import permit, and no plaintiff has been denied an import permit and exhausted the administrative remedies for the denial of a permit.  Further, defendants contend that the advice and finding are not one from which rights or obligations have been determined or from which legal consequences flow – they are merely some predicate determinations made before the Service may issue an import permit. Suppl. Mot. to Dismiss at 5.

Plaintiffs counter that the Tanzania finding is a final agency action because it is a binding norm that sets a threshold requirement for a permit, plaintiffs' members who have no intention of applying for import permits, such as hunting outfitters, have been harmed by the advice and finding, and exhausting administrative remedies is futile.  Pls.' Suppl. Opp. at 4–16.

"'Exhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003), quoting *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 61 (D.C. Cir. 1990).  In a recent case challenging the Service's 2005 decision not to issue a non-detriment advice for sport-hunted elephants from Zambia, this Court held that the Service's process of issuing import permits is an adjudication and not a rulemaking.  *Marcum v. Salazar*, 810 F. Supp. 2d 56, 71 (D.D.C. 2011) *vacated and remanded*, 694 F.3d 123 (D.C. Cir. 2012); *see also Franks v. Salazar*, 816 F. Supp. 2d 49, 59 (D.D.C. 2011).  Given this, and without knowing that the plaintiffs had administratively appealed the challenged permit denials with the agency, the Court granted defendants' motion for summary judgment.  The D.C. Circuit overturned that

ruling, finding that because the plaintiffs had not exhausted their administrative remedies, the matter was unripe for judicial review.  694 F.3d 123, 124.

> [I]t is clear that Appellants' action was not ripe for review by the District Court, nor is it ripe for review by this court.  The agency did not take final action on Appellants' permit applications until the FWS Director decided Appellants' administrative appeal, and this did not occur until after the District Court issued its decision.

*Id.* at 129.  The Court of Appeals reached this decision, even though the plaintiffs in that case challenged not only the denial of import permits but also raised claims about procedural defects in the Service's issuance of the non-detriment advice and enhancement finding, as plaintiffs have done here.  *See id.* at 126 (noting that Claim V alleged that the Service applied certain requirements or criteria in a manner that created a new policy or new rule requiring formal public notice and comment rulemaking under the APA and publication in the Federal Register).  Given this binding precedent, the fact that plaintiffs here assert procedural claims does not relieve them of the obligation to exhaust their administrative remedies before filing suit in this case.

Plaintiffs point to the fact that some of their members, like hunting outfitters, for whom "[r]esort to an administrative process would not even be possible" because they do not need import permits, are harmed by the findings nonetheless.  Pls.' Suppl. Opp. at 12.  But the fact that some of plaintiffs' members may suffer harm because of the denial of import permits to hunters does not make the Tanzania advice and finding final agency actions, even if that harm has a "binding impact" on them, as plaintiffs emphasize.  *Id.* at 11.  Again, for an agency's action to be final, it must mark the consummation of the agency's decision making process *and* be one by which the rights or obligations have been determined or from which legal consequences will flow.  *Bennett v. Spear,* 520 U.S. at 177–78.  Even assuming that the Tanzania determinations are one from which the rights or obligations of certain plaintiff members have been determined or from which legal consequences will flow, the fact that the determinations do not mark the

consummation of the Service's decision making process because no plaintiffs have applied for permits precludes the Court from concluding that the determinations are final agency action and that plaintiffs' Tanzania claims are ripe.  *See Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (stating that "two conditions must be satisfied" for agency action to be final:  the action "must mark the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature" and it "must be one by which rights or obligations have been determined, or from which legal consequences will flow"), cert. denied sub nom. *Holistic Candlers & Consumers Ass'n v. FDA*, 133 S. Ct. 497, 184 L. Ed. 2d 296 (2012); *Domestic Secs. v. SEC,* 333 F.3d 239, 246 (D.C. Cir. 2003) (applying the two part *Bennett* test in determining whether an action by the SEC constituted final agency action); *see also Indus. Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005) (holding that the challenged agency action was not final because it "fail[ed] the first prong of the *Bennett* test of finality, in that it [did] not mark the consummation of the agency's decisionmaking process, but [was] merely the beginning of the decision-making process") (internal quotations omitted).

Plaintiffs correctly note that the exhaustion requirement is not jurisdictional, Pls.' Suppl. Opp. at 4–5, and that the Court may waive the exhaustion requirement if exhaustion through the administrative appeals process would be futile.  *Tesoro Ref. & Mktg. Co. v. FERC*, 552 F.3d 868, 874 (D.C. Cir. 2009) (citations omitted) (holding that the futility exception to the administrative exhaustion requirement applies only "in the most exceptional circumstances" where resort to the agency would be "clearly useless" because of the "*certainty* of an adverse decision") (emphasis in original) (internal citations omitted).  But the "mere probability of administrative denial of the relief requested does not excuse failure to pursue administrative remedies . . . ; rather [plaintiffs]

must show that it is certain that their claim will be denied." *UDC Chairs Chapter, Am. Ass'n of Univ. Professors v. Board of Trustees of Univ. of D.C.*, 56 F.3d 1469, 1475 (D.C. Cir. 1995) (internal quotation marks and citations omitted).

The Court will not waive the exhaustion requirement in this case because an adverse decision to any permit application is not certain.  The agency has stated that it continues to accept permit applications and will consider any additional evidence applicants provide to the agency.  Van Norman Decl. at ¶ 21 ("individual permit applications . . . will be considered on a case-by-case basis for 2014 and permits will be granted if the applicants can provide evidence that the findings under both laws can be made").  While the hurdle to obtain an import permit is higher now that the agency has declined to issue a non-detriment advice and enhancement finding for Tanzania, making an adverse permitting decision probable, plaintiffs have not shown that the agency is certain to issue an adverse decision on any permit application.  *Tesoro Ref. & Mktg. Co. v. FERC*, 552 F.3d at 874 (futility exception applies only where an adverse decision from the agency is certain); *UDC Chairs Chapter v. Board of Trustees*, 56 F.3d at 1475 (mere "probability of administrative denial of the relief requested does not excuse failure to pursue administrative remedies").

Accordingly, the Court will grant defendants' motion to dismiss the Tanzania claims for failure to state a claim because the challenged Tanzania advice and finding are not final agency action given that plaintiffs have failed to exhaust their administrative remedies.[5]

## B.    The Court will Deny the Motion to Dismiss the Zimbabwe Claims.

As explained above, unlike importing sport-hunted elephants from Tanzania, hunters do not need a permit to import sport-hunted elephants from Zimbabwe because elephants from

---

[5]    Because this ruling dismisses the Tanzania claims entirely, the Court will deny defendants' motion to dismiss the Tanzania claims for lack of subject matter jurisdiction as moot.

Zimbabwe are on Appendix II of the CITES treaty.   *See* CITES Art. IV(2); *see also* 62 Fed. Reg. 44627, 44633.  Under the ESA, however, the Service must still make a country-wide enhancement finding under the special rule for African elephants before sport-hunted elephants may be imported from Zimbabwe to the United States.  50 C.F.R. § 17.40(e)(3)(iii)(C).

The second amended complaint retains plaintiffs' challenges to the April 4, 2014 interim enhancement finding and adds claims challenging the July 2014 final enhancement finding. Proposed 2d Am. Compl. [Dkt. # 34-2].  It states five counts alleging violations of the ESA and APA, asserting that defendants:

- illegally based the Zimbabwe enhancement findings on a lack of information (Count 1),

- applied an illegal standard in making the enhancement findings (Count 2),

- failed to provide a public notice and comment opportunity before issuing the findings (Count 3),

- improperly imposed an enhancement of survival finding requirement in the special rule governing sport-hunted African elephants on CITES Appendix II (Count 4), and

- illegally refused to find that the importation of sport-hunted elephants from Zimbabwe enhances the species' survival (Count 5).

Proposed 2d Am. Compl. at 27–34, ¶¶ 94–123.

Defendants do not oppose plaintiffs' second amendment of the complaint to the extent that it adds claims challenging the merits of the July 2014 final enhancement finding.  Suppl. Mot. to Dismiss at 8, n.5.  Given the issuance of the final finding, they voluntarily withdraw their arguments that the Zimbabwe claims are unripe or prudentially moot.  *Id.* at 8, n.5.  Finally, defendants maintain their argument that Counts 3 and 4 of the second amended complaint are time barred, *id.*, citing Defs.' Reply for Mot. to Dismiss at 20–22, and that certain of the Zimbabwe claims are moot.  Suppl. Mot. to Dismiss at 8–13.

**1.   The procedural aspects of Counts 3 and 4 are not time barred.**

Defendants move to dismiss the procedural aspects of Counts 3 and 4 as time barred,[6]

citing the six-year statute of limitations for APA claims.  Defs.' Reply for Mot. to Dismiss at 20,

citing 28 U.S.C. § 2401(a); *P & V. Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1023

(D.C. Cir. 2008) (stating that "every civil action commenced against the United States shall be

barred unless the complaint is filed within six years after the right of action first accrues"); and

*Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004) ("The right of action first accrues on the

date of the final agency action.").

Count 3 asserts that defendants were required to provide public notice of the interim and

final Zimbabwe findings in the Federal Register and an opportunity to comment before issuing

them.  According to defendants, because the Service first issued an enhancement finding for

Zimbabwe in 1997 without providing for notice and comment then, the time for plaintiffs to

challenge that alleged procedural defects began to run in 1997.  Defs.' Reply for Mot. to Dismiss

at 21, citing 62 Fed. Reg. 44,627 (Aug. 22, 1997).  Because it has been more than six years since

the agency first issued that finding without notice and comment, defendants argue, the claim now

that notice and comment was required is time barred.  *Id.* at 22, citing *JEM Broad. v. FCC*, 22

F.3d 320, 326 (D.C. Cir. 1994) and *NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191,

196 (D.C. Cir. 1987).

Count 4 claims that defendants improperly imposed an enhancement of survival finding

requirement in the Service's special rule governing sport-hunted African elephants.  Defendants

argue this claim is also time barred.  The Service added the enhancement requirement to the

special rule for African elephants in 1992.  Defs.' Reply for Mot. to Dismiss at 20–21, citing 57

---

6      Counts 3 and 4 of the second amended complaint correspond to Counts 2 and 3 of the
original and the first amended complaints.

Fed. Reg. 35473, 35485 (Aug. 10, 1992).  At that time, elephants from Zimbabwe were on

CITES Appendix I.  *Id.*  When the parties to CITES removed the requirement for an

enhancement determination for Appendix I species in 1994, the Service nonetheless continued to

require enhancement findings under the special rule for African elephants.  *Id.*  And when

African elephants from Zimbabwe were moved from CITES Appendix I to Appendix II in 1998,

the Service still maintained the requirement for enhancement findings under the special rule.  *Id.*

According to defendants, if plaintiffs considered the Service's continued requirement for

enhancement findings in the special rule improper, they should have raised that challenge when

the Service first implemented the special rule in 1992, when it continued to maintain the

requirement in the special rule after it was no longer required under CITES in 1994, and, at the

latest in 1998, when elephants from Zimbabwe were moved from Appendix I to Appendix II.  *Id.*

Because plaintiffs did not do so within the six-year APA statute of limitations, defendants assert,

the claim that the Service illegally imposed an enhancement finding requirement in the special

rule is time barred.  *Id.*

 Defendants' arguments are unavailing.  "A cause of action against an administrative

agency 'first accrues,' within the meaning of §2401(a), as soon as (but not before) the person

challenging the agency action can institute and maintain a suit in court."  *Spannaus v. U.S. Dep't*

*of Justice*, 824 F.2d 52, 56 (D.C. Cir. 1987).  "The right of action first accrues on the date of

the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004).  As explained

above, an agency action is final, and plaintiffs may bring suit, if the two *Bennett* conditions are

met:  the challenged action marks the consummation of the agency's decision making process

and is one by which rights or obligations have been determined or from which legal

consequences will flow.  *See Bennett v. Spear,* 520 U.S. at 177–78.

There is no dispute that the Service's enhancement finding for Zimbabwe is final.  *See* Defs.' Notice; Suppl. Mot. to Dismiss at 3, n.3 (stating defendants do not oppose plaintiffs amending the complaint to add a challenge to the merits of the July 2014 final enhancement finding for Zimbabwe).  In contrast to plaintiffs' Tanzania claims, there is no exhaustion requirement here because plaintiffs are not required to obtain an import permit before importing sport-hunted elephants from Zimbabwe, so the first prong of *Bennett* is satisfied.

The question then is whether the findings determine rights or obligations or result in the flow of legal consequences.  *Bennett* at 177–78.  It is undisputed that plaintiffs were allowed to import sport-hunted elephants from Zimbabwe hunted before April 4, 2014, and that as a result of the challenged Zimbabwe findings, plaintiffs cannot import these elephants from Zimbabwe hunted after that date.  Accordingly, the findings determine plaintiffs' right to import and impose legal consequences on them.  Furthermore, because these plaintiffs were not harmed by either the lack of notice and comment on the original Zimbabwe enhancement finding or the continued requirements for enhancement findings in the special rule, plaintiffs would not have been able to maintain a suit challenging the agency's original 1993 enhancement finding or the special rule's continued requirement for enhancement findings.  Thus, plaintiffs' Zimbabwe claims did not accrue until 2014 when they were prevented from importing their elephants, and their Zimbabwe claims are not time barred.

### 2.   Plaintiffs' argument that the April 2014 interim finding is not moot goes to the merits of their claims.

Finally, defendants argue that the Court should dismiss the claims relating to the April 2014 interim finding because they have been mooted by the agency's July 2014 final finding and none of the mootness exceptions apply.  Suppl. Mot to Dismiss at 8–13.  Plaintiffs contend that their challenges to the interim finding are not moot because the agency did not have the authority

to issue the final finding retroactively to April 2014, and as such, the interim finding had

binding, legal effect between April 4 and July 31, 2014.  Pls.' Suppl. Opp. at 19–24.

Because the issue of whether the Service has authority to issue an enhancement finding

retroactively goes to the scope of the agency's authority under the ESA, the issue goes to the

merits of plaintiffs' claims that the findings violate the ESA and APA.  Accordingly, the Court

will defer ruling on this issue at this juncture of the proceedings.

## CONCLUSION

For the reasons set forth above, the Court will grant plaintiffs' motion for leave to file a

second amended complaint, grant defendants' supplemental motion to dismiss the Tanzania

claims (Counts 6–8) for failure to state a claim, and deny defendants' motions to dismiss the

Zimbabwe claims (Counts 1–5).  The Court will also deny as moot the motion to dismiss the

Tanzania claims for lack of subject matter jurisdiction.  A separate order will issue.


/s/ Royce C. Lamberth
ROYCE C. LAMBERTH
United States District Judge

DATE:  December 26, 2014