[ORAL ARGUMENT NOT YET SCHEDULED]
No. 15-5170

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

SAFARI CLUB INTERNATIONAL AND NATIONAL RIFLE ASSOCIATION OF AMERICA,
*Plaintiffs-Appellants*

v.

SALLY M.R. JEWELL, IN HER OFFICIAL CAPACITY AS THE SECRETARY OF THE
INTERIOR, ET AL.,
*Defendants-Appellees*,

On Appeal from the United States District Court
for the District of Columbia

_____

**BRIEF OF *AMICI CURIAE* IN SUPPORT OF DEFENDANTS-APPELLEES**
_____

Anna Frostic
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, DC 20037
Telephone: 202-676-2333
afrostic@humanesociety.org

*Counsel for The Humane Society of the United States, Humane Society
International, International Fund for Animal Welfare, and Born Free USA*

## CERTIFICATE AS TO INTERESTED PARTIES, RULINGS, AND RELATED CASES

### Parties and Amici

All parties and intervenors appearing before the district court and in this Court are listed in the Brief for Plaintiffs-Appellants.

The Humane Society of the United States, Humane Society International, International Fund for Animal Welfare, and Born Free USA submitted the instant motion for leave to file an *amicus curiae* brief before this Court.

### Ruling Under Review

References to the ruling at issue appear in the Brief for Plaintiffs-Appellants.

### Related Cases

References to Plaintiffs' prior appeal (No. 14-5152) appear in the Brief for Plaintiffs-Appellants.

Respectfully submitted this 11th day of March 2016,

      /s/ Anna Frostic
Anna Frostic
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, DC 20037
Telephone: 202-676-2333
afrostic@humanesociety.org

*Counsel for The Humane Society of the United States and Humane Society International, International Fund for Animal Welfare, and Born Free USA*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *Amici Curiae* certify as follows: The Humane Society of the United States and Humane Society International are non-profit corporations under the laws of the District of Columbia, registered with the Internal Revenue Service as 501(c)(3) organizations. Born Free USA is a non-profit corporation under the laws of California, registered with the Internal Revenue Service as a 501(c)(3) organization. International Fund for Animal Welfare is a non-profit corporation under the laws of Massachusetts, registered with the Internal Revenue Service as a 501(c)(3) organization. These organizations do not have stock, nor do they have parent companies, subsidiaries, or affiliates that have issued shares to the public.

Respectfully submitted this 11th day of March 2016,

\_\_\_\_/s/ Anna Frostic_____
Anna Frostic
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, DC 20037
Telephone: 202-676-2333
afrostic@humanesociety.org

*Counsel for The Humane Society of the United States, Humane Society International, International Fund for Animal Welfare, and Born Free USA*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................iv

**GLOSSARY** ................................................................................. viii

**INTRODUCTION** ...............................................................................1

**IDENTITY AND INTERESTS OF AMICI** ...........................................1

**BACKGROUND** ................................................................................4

    I.    The African Elephant Conservation Crisis.................................4

    II.   FWS Action to Protect African Elephants .............................10

**ARGUMENT** ...................................................................................13

    I.    The ESA Requires Enhancement Determinations to Be
           Made on a Case-by-Case Basis and an Enhancement
           Memorandum Is Not a Final Agency Action ..........................13

    II.   CITES Requires a Non-Detriment Finding to Be Issued
           on a Case-by-Case Basis and the Non-Detriment Advice
           Is Not a Final Agency Action.................................................18

    III.  SCI/NRA Had No Reasonable Expectation that Import
           Permits Would Be Issued Prior to the Issuance of the
           Enhancement Memorandum and Non-Detriment Advice.......................20

    IV.  The Appeal is Moot Because The Challenged Memoranda
           Have Been Superseded By More Recent Elephant
           Conservation Actions .............................................................21

**CONCLUSION**.................................................................................22

# TABLE OF AUTHORITIES

Cases

*Anderson v. Carter*, 802 F.3d 4 (D.C. Cir. 2015) ..................................................21
*DRG Funding Corp. v. Sec'y of Hous. and Urban Dev.*, 76 F.3d 1212
    (D.C.Cir.1996)..................................................................................................19
*Franks v. Salazar*, 816 F. Supp. 2d 49 (D.D.C. 2011) ...........................................20
*\*Friends of Animals v. Salazar*, 626 F. Supp. 2d 102 (D.D.C. 2009).....................16
*Gordon v. Norton*, 322 F.3d 1213 (10th Cir. 2003)................................................17
*Marcum v. Salazar*, 694 F.3d 123, (D.C. Cir. 2012) ..............................................20
*Rochester Tel. Corp. v. United States*, 307 U.S. 125 (1939)..................................20
*Sierra Club v. Clark*, 755 F.2d 608 (8th Cir. 1985)...............................................14
*Village of Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52 (DC Cir. 2006) ........19

Statutes, Constitutions, and Conventions

16 U.S.C. § 1531 .....................................................................................................14
16 U.S.C. § 1532 .....................................................................................................14
16 U.S.C. § 1533 .....................................................................................................14
16 U.S.C. § 1538 .....................................................................................................13
16 U.S.C. § 1539.............................................................................................. 14, 16
Convention on International Trade in Endangered Species of Wild Fauna and
    Flora, March 3, 1973, T.I.A.S. No. 8249, 27 U.S.T. 1087............................ 18, 19
U.S. Const. art. III ...................................................................................................21

Regulations

50 C.F.R. § 17.11 .....................................................................................................15
50 C.F.R. § 17.21 ............................................................................................. 13, 14
50 C.F.R. § 17.22 .....................................................................................................13
50 C.F.R. § 17.31 .....................................................................................................14
50 C.F.R. § 17.40 ...................................................................................... 13, 15, 17
50 C.F.R. § 23.61 .....................................................................................................19

Administrative Publications

Endangered and Threatened Wildlife and Plants; Listing Two Lion Subspecies, 80
    Fed. Reg. 79999, 80018-22 (Dec. 23, 2015) ........................................................8
Endangered and Threatened Wildlife and Plants; Proposed Endangered Status for
    Certain Populations of the African Elephant and Revision of Special Rule, 56
    Fed. Reg. 11392 (March 18, 1991)......................................................................16

Endangered and Threatened Wildlife and Plants; Retention of Threatened Status for the Continental Population of the African Elephant, 57 Fed. Reg. 35473 (Aug. 10, 1992)..................................................................................16

Endangered and Threatened Wildlife and Plants; Revision of the Section 4(d) Rule for the African Elephant (*Loxodonta africana*), 80 Fed. Reg. 45154 (July 29, 2015). ................................................................................12

Executive Order No. 13648 (July 1, 2013), 78 Fed. Reg. 40621 (July 5, 2013) ……………………………………………………………………6, 10, 11

FWS, Director's Order No. 210 (Feb. 25, 2014), http://www.fws.gov/policy/do210.pdf ................................................11

FWS, Director's Order No. 212 (Dec. 9, 2015), http://www.fws.gov/policy/do212.pdf ..................................... 13, 21

FWS, *Ensuring the Future of the Black Rhino* (Nov. 25, 2014), at http://www.fws.gov/news/blog/index.cfm/2014/11/25/Ensuring-the-Future-of-the-Black-Rhino......................................................................15

FWS, *Import of Elephant Trophies from Tanzania & Zimbabwe*, http://www.fws.gov/international/permits/by-activity/sport-hunted-trophies.html (last visited March 9, 2016)...............................................................12

FWS, *Memorandum To File Re: Tanzania Elephant Trophy Imports* (July 3, 2015), *available at* http://www.fws.gov/international/pdf/enhancement-finding-2015-elephant-Tanzania.PDF ..........................................................8

Listing of the African Elephant as a Threatened Species, 43 Fed. Reg. 20499, 20500 (May 12, 1978)............................................................ 4, 15

National Strategy to Combat Wildlife Trafficking (Feb. 2014), *available at* http://www.whitehouse.gov/sites/default/files/docs/nationalstrategywildlifetrafficking.pdf..................................................................................11

Other Authorities

Bilham Kimati, *Tanzania: Kagasheki Warns Corrupt Hunters*, Tanzania Daily News (Dar es Salaam) (2012), *available at* http://allafrica.com/stories/201209060195.html ....................................9

CITES Secretariat, IUCN/SSC African Elephant Specialist Grp. & TRAFFIC Int'l, *Status of African Elephant Populations and Levels of Illegal Killing and the Illegal Trade in Ivory: A Report to the African Elephant Summit* (2013), *available at* https://cmsdata.iucn.org/downloads/african_elephant_summit_background_document_2013_en.pdf..........................................................4

CITES, *Elephant Conservation, Illegal Killing, and Ivory Trade* 10 (2014), *available at* http://www.cites.org/sites/default/files/eng/com/sc/65/E-SC65-42-01_2.pdf...............................................................................6

Economists at Large, The $200 Million Question: How Much Does Trophy Hunting Really Contribute to African Communities? (2013), *available at* http://www.ifaw.org/sites/default/files/Ecolarge-2013-200m-question.pdf ........10

Fred Allendorf & Jeffrey Hard, *Human-Induced Evolution Caused by Unnatural Selection through Harvest of Wild Animals*, 106 Proceedings of the National Academy of Sciences of the United States of America (2009).............................7

George Wittemyer et al., *Illegal Killing for Ivory Drives Global Decline in African Elephants*, 111 PNAS (2014) ................................................................................10

Hassanali Sachedina, Wildlife Is Our Oil : Conservation, Livelihoods and NGOs in the Tarangire Ecosystem, Tanzania (2008), *available at* http://i2.cdn.turner.com/cnn/2015/images/05/19/oxfordstudy.pdf ......................10

HSI, Trophy Madness: Elite Hunters, Animal Trophies and Safari Club International's Hunting Awards (Sept. 2015), *available at* http://blog.humanesociety.org/wp-content/uploads/2015/09/TROPHY-MADNESS_FINAL.pdf.................................................................................................7

HSUS, HSI, IFAW, and The Fund for Animals, Petition to the Secretary of the Interior to List the African Elephant (*Loxodonta africana*) as Endangered Pursuant to the Endangered Species Act (Feb. 11, 2015), *available at* http://www.eswr.com/docs/listing/petitions/African%20Elephant%20uplisting%20petition%20(2.11.15).pdf...................................................................................5

Hugo Jachmann et al., *Tusklessness in African Elephants: A Future Trend*, 33 African Journal of Ecology, 230-35(1995) ..........................................................8

IUCN, *Big Game Hunting in West Africa. What is its Contribution to Conservation?*, Programme Afrique Centrale et Occidentale (2009), *available at* https://portals.iucn.org/library/efiles/edocs/2009-074-En.pdf ..............................9

Jafari Kideghesho, Who Pays for Wildlife Conservation in Tanzania and Who Benefits? (2008), *available at* https://dlc.dlib.indiana.edu/dlc/bitstream/handle/10535/587/Kideghesho_102301.pdf?sequence=1 ...................................................................................................9

John Kioko et al., *Environmental Correlates of African Elephant (*Loxodonta Africana*) Distribution in Manyara Area, Tanzania*, 5 Annual Research and Review in Biology (2015) ...............................................................................................5

Maraya Cornell, *Why Are Most of Tanzania's Elephants Disappearing?*, National Geographic (June 12, 2015), *at* http://news.nationalgeographic.com/2015/06/150612-tanzania-environmental-investigation-agency-mary-rice-elephants-poaching-cites-corruption/ .................5

Moses Okello et al., *The Status of Key Large Mammals in the Kenya – Tanzania Borderland: A Comparative Analysis and Conservation Implication,* 7 International Journal of Biodiversity Conservation (2015)...................................5

Paul Steyn, *Largest Wildlife Census in History Makes Waves in Conservation*, National Geographic (Jan. 4, 2016), http://news.nationalgeographic.com/2016/01/160104-great-elephant-census-vulcan-paul-allen-elephants-conservation/............................................................5

Rachael Bale, *Hard Numbers Reveal Scale of America's Trophy-Hunting Habit*, National Geographic (Feb. 2016), http://news.nationalgeographic.com/2016/02/160206-American-trophy-hunting-wildlife-conservation/................................................................7

Samuel Wasser et al., *Genetic Assignment of Large Seizures of Elephant Ivory Reveals Africa's Major Poaching Hotspots*, 349 Science (2015).........................6

Transparency International, *Table of Results: Corruption Perceptions Index 2015*, http://www.transparency.org/cpi2015#results-table (last visited March 9, 2016).9

United Nations Environment Programme et al., Elephants in the Dust: The African Elephant Crisis 45 (2013), *available at* https://www.cites.org/sites/default/files/common/resources/pub/Elephants_in_the_dust.pdf ...............................................................7

Varun Vira & Thomas Ewing, Ivory's Curse: The Militarization & Professionalization of Poaching in Africa (April 2014), *available at*. http://www.bornfreeusa.org/downloads/pdf/Ivorys-Curse-2014.pdf....................6

Victor Mose & David Western, *Spatial Cluster Analysis for Large Herbivore Distributions: Amboseli Ecosystem, Kenya*, Ecological Informatics (2015).........6

William-Georges Crosmary et al., *Does trophy hunting matter to long-term population trends in African herbivores of different dietary guilds?*, 18 Animal Conservation, 117-30 (2015)..............................................................8

Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| CITES | Convention on International Trade in Endangered Species of Wild Fauna and Flora |
| ESA | Endangered Species Act |
| FWS | U.S. Fish and Wildlife Service |
| GDP | gross domestic product |
| HSI | Humane Society International |
| HSUS | The Humane Society of the United States |
| IFAW | International Fund for Animal Welfare |
| IUCN | International Union for Conservation of Nature |
| SCI/NRA | Safari Club International and the National Rifle Association of America |

**INTRODUCTION**

Importing hunting trophies of imperiled African wildlife into the United States is not a right, but a privilege perversely enjoyed by members of Safari Club International and the National Rifle Association of America ("SCI/NRA"). SCI/NRA challenge the U.S. Fish and Wildlife Service's ("FWS") eminently reasonable, science-based decisions to document the uncontrolled poaching crisis decimating African elephants in Tanzania and the mismanagement of Tanzania's elephant hunting program. But the two internal agency memoranda at issue in this appeal – the Enhancement Memorandum and the Non-Detriment Advice (collectively "2014 Memoranda") – are not final agency actions and the district court properly dismissed SCI/NRA's complaint for failure to state a claim. (DA ___, Dkt. 48; AR159 at 001771; AR 2015 at 003047). Further, the 2014 Memoranda have been superseded by 2015 memoranda and a broader suite of FWS efforts to expand protection of African elephants and increase scrutiny of trophy imports, making this appeal moot.

**IDENTITY AND INTERESTS OF AMICI**

The Humane Society of the United States ("HSUS") is the nation's largest animal protection organization. Based in Washington, DC, HSUS works to protect all animals and combat cruelty through litigation, legislation, investigation, education, advocacy, grant-making, emergency rescue missions, field work, and

direct care to tens of thousands of animals. HSUS has worked for decades to improve the plight of African elephants, petitioning FWS to list African elephants as endangered in 1989 and again in 2015, in order to prohibit the import of elephant hunting trophies and the domestic trade in ivory. Further, HSUS is an active participant in the Endangered Species Act ("ESA") permitting program, reviewing and commenting on dozens of permit applications each year and monitoring the issuance of trophy import permits.

Humane Society International ("HSI") works domestically and abroad to protect wildlife from abuse, including the unsustainable trade in wildlife parts and trophy hunting. HSI advocates to improve protection for wildlife under the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES") and conducts research to provide the public and decision-makers with information about the United States' role in global trophy hunting and the conservation and economic impacts of trophy hunting. Through corporate outreach, HSI has persuaded numerous airlines to ban the transport of elephant hunting trophies (and a total of 45 airlines now have this policy). Additionally, HSI has funded cutting edge research on the use of non-steroidal, non-invasive contraception of wild elephant populations, used to humanely and non-lethally manage elephant populations in South Africa.

The International Fund for Animal Welfare ("IFAW") saves individual animals, animal populations, and habitats all over the world. With projects in more than 40 countries, IFAW provides hands-on assistance to wildlife, livestock, and companion animals in need. IFAW works on the ground in Africa and India to safeguard critical habitat for African and Asian elephants, and in the policy arenas of countries around the globe (and international fora such as CITES) to advocate for increased legal and trade protections for the species. Through its public education campaigns, IFAW helps citizens to better understand the problems elephants face, and through training programs for wildlife officials IFAW promotes the tools necessary to achieve conservation outcomes.

Born Free USA is a global leader in animal welfare and wildlife conservation. Born Free USA's mission is to end suffering of wild animals in captivity, conserve threatened and endangered species, and encourage compassionate conservation globally. Born Free USA leads vital legal and policy campaigns against animals in entertainment, the exotic pet trade, wildlife trapping, and the destructive international wildlife trade (and particularly the trafficking of elephant ivory). Born Free also works internationally, supporting anti-poaching activities in Tanzania and defending international and foreign legal protections for elephants.

As animal protection and conservation organizations with decades of investment in efforts to secure a future for African elephants, it is essential to Amici's interests that FWS' authority to strictly regulate the import of African elephant hunting trophies – and the agency's capacity to adapt its management to changed circumstances – are upheld. Amici submit this brief to underscore the importance of the merits of this case and to urge the Court to affirm the district court's order dismissing SCI/NRA's complaint for failure to state a claim.

## BACKGROUND[1]

I.    <u>The African Elephant Conservation Crisis</u>

The majestic African elephant (*Loxodonta africana*) has suffered a catastrophic population decline of approximately 60% since 1978, with hundreds of thousands fewer elephants in existence today than when the species was first listed under the ESA.[2] Tanzania, once a haven for the world's largest land animal, is the epicenter of this freefall – the elephant population in Tanzania has decreased

---

[1] Pertinent statutes, regulations, and other authority that are not included in the parties' principal briefs are included in a separately-bound addendum.

[2] *Compare* CITES Secretariat, IUCN/SSC African Elephant Specialist Grp. & TRAFFIC Int'l, *Status of African Elephant Populations and Levels of Illegal Killing and the Illegal Trade in Ivory: A Report to the African Elephant Summit* (2013), *available at* https://cmsdata.iucn.org/downloads/african_elephant_summit_background_document_2013_en.pdf *with* Listing of the African Elephant as a Threatened Species, 43 Fed. Reg. 20499, 20500 (May 12, 1978).

50-60% just since 2009.[3] For these long-living, slow-reproducing animals, such a precipitous loss of individuals threatens the continued existence of the species.[4]

      This sharp decline is a result of poaching for the ivory trade, unsustainable trophy hunting, habitat loss, human-elephant conflict, regional instability, and climate change. With all megafauna, habitat loss is a serious concern – studies confirm that elephants are losing habitat to expanding farmland and urban areas and severe drought in Tanzania.[5] African elephant populations are shrinking even

---

[3] *See* Paul Steyn, *Largest Wildlife Census in History Makes Waves in Conservation*, National Geographic (Jan. 4, 2016), http://news.nationalgeographic.com/2016/01/160104-great-elephant-census-vulcan-paul-allen-elephants-conservation/ (aerial census estimates 53% decline in Tanzania, from an estimated 109,000 in 2009 to 51,000 in 2015); Maraya Cornell, *Why Are Most of Tanzania's Elephants Disappearing?*, National Geographic (June 12, 2015), *at* http://news.nationalgeographic.com/2015/06/150612-tanzania-environmental-investigation-agency-mary-rice-elephants-poaching-cites-corruption/ (reporting that Tanzania's own estimate is that its elephant population plummeted by more than 60% from 2009-2014).
[4] *See* HSUS, HSI, IFAW, and The Fund for Animals, Petition to the Secretary of the Interior to List the African Elephant (*Loxodonta africana*) as Endangered Pursuant to the Endangered Species Act (Feb. 11, 2015), *available at* http://www.eswr.com/docs/listing/petitions/African%20Elephant%20uplisting%20petition%20(2.11.15).pdf.
[5] John Kioko et al., *Environmental Correlates of African Elephant (*Loxodonta Africana*) Distribution in Manyara Area, Tanzania*, 5 Annual Research and Review in Biology, 147-154 (2015); Moses Okello et al., *The Status of Key Large Mammals in the Kenya – Tanzania Borderland: A Comparative Analysis and Conservation Implication,* 7 International Journal of Biodiversity Conservation, 267-276 (2015).

within protected areas in East Africa,[6] and elephants are particularly imperiled due to overutilization for commercial and recreational purposes.

According to the CITES Secretariat, "poaching numbers in Africa remain at levels that are unsustainable, with mortality exceeding the natural birth rate, resulting in an ongoing decline in African elephant numbers."[7] Illegal killing of elephants for the ivory trade is now a "coordinated slaughter commissioned by armed and organized criminal syndicates" that take down elephants with assault rifles and sometimes cut the tusks out of an elephant's face while the animal is still alive.[8] By analyzing DNA in seized ivory, experts have identified poaching hotspots, including in Tanzania, where 25,000 elephants were poached in the Selous ecosystem between 2009 and 2013.[9] Indeed, Tanzania and Kenya accounted for over half of the largest ivory seizures from 2009-2011.[10]

---

[6] Victor Mose & David Western, *Spatial Cluster Analysis for Large Herbivore Distributions: Amboseli Ecosystem, Kenya*, Ecological Informatics (2015).
[7] CITES, *Elephant Conservation, Illegal Killing, and Ivory Trade* 10 (2014), *available at* http://www.cites.org/sites/default/files/eng/com/sc/65/E-SC65-42-01_2.pdf.
[8] Executive Order No. 13648 (July 1, 2013), 78 Fed. Reg. 40621 (July 5, 2013). *See also* Varun Vira & Thomas Ewing, Ivory's Curse: The Militarization & Professionalization of Poaching in Africa (April 2014), *available at* http://www.bornfreeusa.org/downloads/pdf/Ivorys-Curse-2014.pdf.
[9] Samuel Wasser et al., *Genetic Assignment of Large Seizures of Elephant Ivory Reveals Africa's Major Poaching Hotspots*, 349 Science, 84-87 (2015).
[10] United Nations Environment Programme et al., Elephants in the Dust: The African Elephant Crisis 45 (2013), *available at*

Despite these enormous threats to the species' survival, African elephants continue to be recreationally hunted for trophies, primarily by wealthy Americans seeking to hang tusks on their walls and win prizes from Safari Club International.[11] The United States is by far the leading importer of African elephant parts as hunting trophies – according to trade data compiled by FWS, from 2005-2014, trophies of 4,624 African elephants were imported into the U.S. (over 91% of which came from South Africa, Namibia, Zimbabwe, and Botswana, where elephants are listed under CITES Appendix II).[12] Trophy hunters routinely target the biggest and strongest males, but removing these animals from the breeding pool unnaturally selects for smaller and weaker animals.[13] By removing large bull elephants from the population, trophy hunting can decrease genetic variation, shift the population structure, decrease population density, and cause unnatural

---

https://www.cites.org/sites/default/files/common/resources/pub/Elephants_in_the_dust.pdf.

[11] *See* HSI, Trophy Madness: Elite Hunters, Animal Trophies and Safari Club International's Hunting Awards (Sept. 2015), *available at* http://blog.humanesociety.org/wp-content/uploads/2015/09/TROPHY-MADNESS_FINAL.pdf.

[12] *See, e.g.,* Rachael Bale, *Hard Numbers Reveal Scale of America's Trophy-Hunting Habit*, National Geographic (Feb. 2016), http://news.nationalgeographic.com/2016/02/160206-American-trophy-hunting-wildlife-conservation/.

[13] Fred Allendorf & Jeffrey Hard, *Human-Induced Evolution Caused by Unnatural Selection through Harvest of Wild Animals*, 106 Proceedings of the National Academy of Sciences, 9987-94 (2009).

evolutionary impacts (such as increasing the occurrence of mature elephants with no tusks).[14]

Given these biological impacts (combined with the severity of the ongoing poaching crisis and the ethics of whether species threatened with extinction should be recreationally hunted), it is absolutely imperative for the species' survival that wildlife managers use the best available science to identify the rate of sustainable offtake (if any).[15] To determine such rate, a precise census of the existing population is needed – but as noted above, the most recent population surveys in Tanzania show that elephant numbers have plummeted (and, notably, Tanzania set its 2014-2015 quota at 100 bull elephants well before this data was obtained).[16] Further, the likelihood of a country being able to strictly manage a hunting program is significantly diminished when hunting guides are able to bribe wildlife officials in order to secure necessary paperwork to facilitate a profitable hunt.

---

[14] Hugo Jachmann et al., *Tusklessness in African Elephants: A Future Trend*, 33 African Journal of Ecology, 230-35 (1995); William-Georges Crosmary et al., *Does trophy hunting matter to long-term population trends in African herbivores of different dietary guilds?*, 18 Animal Conservation, 117-30 (2015).

[15] *See, e.g.,* Endangered and Threatened Wildlife and Plants; Listing Two Lion Subspecies, 80 Fed. Reg. 79999, 80018-22 (Dec. 23, 2015) (discussing the complexity of setting quotas for lion hunting in Tanzania and other African range states).

[16] FWS, *Memorandum To File Re: Tanzania Elephant Trophy Imports* (July 3, 2015), *available at* http://www.fws.gov/international/pdf/enhancement-finding-2015-elephant-Tanzania.PDF (noting that from 2007-2013 Tanzania had an export quota of 200 bull elephants (400 tusks) and that in 2014 and 2015 the quota was set at 100 bull elephants (200 tusks)).

Tanzania scored a 30 on Transparency International's 2015 Corruption Perception Index[17] – which measures perceived levels of public sector corruption based on expert opinion and is based on a scale of 0 (highly corrupt) to 100 (very clean) – and it is well-established that the trophy hunting industry in Tanzania is rife with corruption.[18]

In addition to these significant concerns regarding the unsustainability of African elephant trophy hunting, the notion that trophy hunting promotes conservation by supporting local communities in range countries is unfounded. According to an International Union for Conservation of Nature ("IUCN") analysis from 2009, Africa's 11 primary big-game hunting countries only contributed an average of 0.6% to the national GDP.[19] Of this marginal profit, studies suggest that as little as 3-5% of trophy hunting revenues are actually shared with local

---

[17] *See* Transparency International, *Table of Results: Corruption Perceptions Index 2015*, http://www.transparency.org/cpi2015#results-table (last visited March 9, 2016).

[18] Jafari Kideghesho, Who Pays for Wildlife Conservation in Tanzania and Who Benefits? (2008), *available at* https://dlc.dlib.indiana.edu/dlc/bitstream/handle/10535/587/Kideghesho_102301.pdf?sequence=1; Bilham Kimati, *Tanzania: Kagasheki Warns Corrupt Hunters*, Tanzania Daily News (Dar es Salaam) (2012), *available at* http://allafrica.com/stories/201209060195.html.

[19] IUCN, *Big Game Hunting in West Africa. What is its Contribution to Conservation?*, Programme Afrique Centrale et Occidentale (2009), *available at* https://portals.iucn.org/library/efiles/edocs/2009-074-En.pdf.

communities.[20] This financial contribution pales in comparison to the benefits that non-consumptive ecotourism brings to Tanzania, which is one of the most popular photo-safari destinations for foreign tourists.

Thus, while 96 elephants per day are killed in Africa for human greed,[21] SCI/NRA are expending their resources to challenge FWS' reasonable precautionary actions to address the dire plight of one of the world's most beloved species, all so that their members can continue to take advantage of lax Tanzanian oversight to kill more elephants for frivolous trophies and prizes.

II.    FWS Action to Protect African Elephants

On July 1, 2013, President Obama issued Executive Order No. 13648, directing federal agencies to "take all appropriate actions within their authority, including the promulgation of rules and regulations and the provision of technical and financial assistance, to combat wildlife trafficking." Exec. Order No. 13648 § 1 (July 1, 2013), 78 Fed. Reg. 40621 (July 5, 2013). The order further establishes a Presidential Task Force on wildlife trafficking to address the escalating

---

[20] Economists at Large, The $200 Million Question: How Much Does Trophy Hunting Really Contribute to African Communities? (2013), *available at* http://www.ifaw.org/sites/default/files/Ecolarge-2013-200m-question.pdf; Hassanali Sachedina, Wildlife Is Our Oil : Conservation, Livelihoods and NGOs in the Tarangire Ecosystem, Tanzania (2008), *available at* http://i2.cdn.turner.com/cnn/2015/images/05/19/oxfordstudy.pdf.
[21] *See* George Wittemyer et al., *Illegal Killing for Ivory Drives Global Decline in African Elephants*, 111 PNAS (2014).

international poaching crisis and the illegal trade in wildlife and their derivative

parts and products (and African elephant ivory in particular). *Id.* § 2. In February

2014, the President adopted a National Strategy for Combatting Wildlife

Trafficking, announcing the Administration's guiding principles for strengthening

enforcement of wildlife laws, reducing U.S. demand for illegally-traded wildlife,

and expanding international cooperation and commitment to address this issue.[22]

Immediately thereafter, FWS issued Director's Order No. 210 to strengthen

enforcement of existing laws pertaining to the trade in ivory (including ivory

obtained through trophy hunting), making clear that the burden of proof is on the

importer "to definitively show" that the importation of elephant tusks is ESA

compliant.[23] Simultaneously, in February and March 2014, FWS issued the 2014

Memoranda at issue in this appeal, which document agency findings on the

unsustainability of elephant trophy hunting in Tanzania and emphasize the need for

strict scrutiny of imports of elephant trophies in order to protect this species

threatened with extinction.[24] In July 2015, FWS issued a new non-detriment advice

and enhancement memorandum for Tanzanian elephant trophies proposed to be

---

[22] *See* National Strategy to Combat Wildlife Trafficking (Feb. 2014), *available at*
http://www.whitehouse.gov/sites/default/files/docs/nationalstrategywildlifetrafficki
ng.pdf.
[23] *See* FWS, Director's Order No. 210 § 2 (Feb. 25, 2014),
http://www.fws.gov/policy/do210.pdf.
[24] DA ___, AR159 at 001771; AR 2015 at 003047.

imported in 2015.[25] The 2014 and 2015 memoranda were specific to the respective calendar years.

Also in July 2015, FWS issued a proposed rule to amend the ESA regulations to significantly restrict the domestic trade in ivory and to strictly scrutinize the importation of African elephant trophies, regardless of the year the hunt occurred. Endangered and Threatened Wildlife and Plants; Revision of the Section 4(d) Rule for the African Elephant (*Loxodonta africana*), 80 Fed. Reg. 45154 (July 29, 2015). Recognizing that an elephant trophy often consists of just the tusks (as opposed to a taxidermy mount of the entire animal), FWS proposed to limit the import of elephant trophies to two per hunter per year in order to prevent commercial quantities of raw ivory from being imported under the guise of hunting trophies. *Id.* at 45165. FWS also proposed to increase oversight of elephant trophy imports, by requiring an ESA threatened species permit for the import of elephant trophies from any African range state. *Id.*

Relatedly, in December 2015, FWS issued Director's Order No. 212, prohibiting FWS from issuing ESA or CITES trophy import permits for any species to individuals who previously violated federal wildlife law, and directing

---

[25] *See* FWS, *Import of Elephant Trophies from Tanzania & Zimbabwe*, http://www.fws.gov/international/permits/by-activity/sport-hunted-trophies.html (last visited March 9, 2016). Notably, SCI/NRA have not challenged these 2015 actions.

FWS to "consider all relevant facts or information available" when determining

whether to issue a permit.[26]

Finally, at the time of the filing of this brief, FWS was preparing an overdue

90-day finding on a petition from HSUS, HSI, IFAW, and The Fund for Animals

to uplist African elephants to endangered, which seeks to prohibit the import of

trophies from any country that fails to sustainably manage a hunting program.

Therefore, the 2014 Memoranda at issue in this appeal are part of a broader

suite of reform to protect African elephants from extinction and more strictly

scrutinize the actions of American trophy hunters and do not represent the

agency's final or most recent action on the subject.

## ARGUMENT

I.  <u>The ESA Requires Enhancement Determinations to Be Made on a Case-by-Case Basis and an Enhancement Memorandum Is Not a Final Agency Action</u>

Pursuant to the ESA (16 U.S.C. § 1538(a)) and implementing regulations

(50 C.F.R. §§ 17.21, 17.22), once the Service lists a species as endangered,

---

[26] *See* FWS, Director's Order No. 212 § 3 (Dec. 9, 2015), http://www.fws.gov/policy/do212.pdf. At the same time, consistent with its proposed special rule for African elephants and the 2014 Memoranda, FWS issued a final rule listing African lions under the ESA, requiring import permits for all lion trophies and providing that FWS will review each country's lion management program to determine if it provides a net conservation benefit. 80 Fed. Reg. 79999; 50 C.F.R. § 17.40(r).

individuals of the species are automatically protected from import, export, interstate sale, and interstate commercial transport, unless FWS issues a permit after making a finding that the proposed activity is "for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A); 50 C.F.R. § 17.21(g)(1)(ii).

For threatened species, the Service "shall issue such regulations as he deems necessary and advisable to provide for the conservation of such species." 16 U.S.C. § 1533(d). The Service generally applies the same protections to threatened species as endangered species, but certain species, like the African elephant, are regulated under a special rule. 50 C.F.R. § 17.31. Special rules must be designed and implemented to actually promote the conservation of the species. *See generally Sierra Club v. Clark*, 755 F.2d 608 (8th Cir. 1985)*; see also* 16 U.S.C. § 1531(b),(c) (the primary purpose of the ESA is to "provide a program for the conservation of such endangered species" and federal agencies "shall utilize authorities in furtherance" of this conservation purpose); 16 U.S.C. § 1532(3) (the term "conservation" means "to use . . . all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary").

Since 1978, the African elephant (*Loxodonta africana*) has been listed as threatened under the ESA and regulated under a special rule (although FWS is

currently considering a petition to reclassify the species as endangered, and FWS

has proposed to amend the existing special rule, either of which action would

significantly restrict elephant trophy imports from all African range states). *See* 43

Fed. Reg. 20499. Under existing regulations, an ESA import permit for African

elephant trophies is not required, but FWS does require that for an import to be

lawful FWS must make a "determination" that "the killing of the animal whose

trophy is intended for import would enhance survival of the species." 50 C.F.R. §§

17.11, 17.40(e)(3)(iii)(C).

    As the plain language of the regulation makes clear, the enhancement

standard can only be met by activities that positively benefit the species in the

wild.[27] There is no indication in the regulatory history that FWS intended the

enhancement standard in the current special rule to mean something different than

the enhancement standard applied to endangered species by statute. *See*

Endangered and Threatened Wildlife and Plants; Retention of Threatened Status

---

[27] *See Enhance*, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/enhance (last visited March 9, 2016) (defining "enhance" as "to increase or improve"). *See also* FWS, *Ensuring the Future of the Black Rhino* (Nov. 25, 2014), at http://www.fws.gov/news/blog/index.cfm/2014/11/25/Ensuring-the-Future-of-the-Black-Rhino (acknowledging that the ESA enhancement standard is more stringent than the CITES non-detriment standard and that trophy import permits should only be issued if the Service finds "that the [animal] is taken as part of a well-managed conservation program that *contributes to* the long-term survival of the species") (emphasis added).

15

for the Continental Population of the African Elephant, 57 Fed. Reg. 35473 (Aug. 10, 1992); *see also* Endangered and Threatened Wildlife and Plants; Proposed Endangered Status for Certain Populations of the African Elephant and Revision of Special Rule, 56 Fed. Reg. 11392 (March 18, 1991) (proposed rule to require ESA import permits for African elephant trophies, to be issued only if FWS finds that the range country elephant program "[p]rovides evidence that controlled sport-hunting activities enhance the survival of the population of African elephants."). Therefore, the enhancement determination required for African elephant trophy imports is the functional equivalent of an enhancement finding that is statutorily required for the import of an endangered species.

Section 10 of the ESA requires that individualized enhancement findings be made based on the specific facts at issue in a permit application. 16 U.S.C. § 1539(c). Indeed, in a case brought by HSUS challenging an FWS regulation that waived the permitting requirement for three endangered species exploited by trophy hunters, the district court explicitly held that the ESA requires FWS to independently evaluate the merits of each request for an exception to the ESA. *Friends of Animals v. Salazar*, 626 F. Supp. 2d 102, 111-19 (D.D.C. 2009) (holding "that the text, context, purpose and legislative history of the statute make clear that Congress intended permits for the enhancement of propagation or survival of an endangered species to be issued on a case-by-case basis"). Thus,

FWS is required to evaluate each African elephant import on a case-by-case basis and make an enhancement determination based on the particular facts presented by the applicant and in light of the current pressures a listed species faces. Indeed, the plain language of the special rule makes clear that such determination is to be made specifically for "*the animal* whose trophy is intended for import." 50 C.F.R. § 17.40(e)(3)(iii)(C) (emphasis added).

At issue in this case is a memorandum to the file on the subject of enhancement determinations for African elephant trophies from Tanzania killed during 2014. This Enhancement Memorandum does not and cannot constitute the enhancement *determination* for any particular import. Any person seeking to import an elephant trophy killed in Tanzania in 2014 (to the extent such person exists) must first apply for a permit under CITES (as discussed below), and the application form (#3-200-19) specifically requests details of the location and circumstances of the elephant hunt. The submission of this import permit application triggers the requirement for FWS to issue (or deny) an enhancement determination, taking into account the Enhancement Memorandum as well as information included in the permit application and any other information available regarding the conservation status of elephants in Tanzania.

Thus, the Enhancement Memorandum is not a final agency action. *See, e.g., Gordon v. Norton*, 322 F.3d 1213, 1220-21 (10th Cir. 2003) (holding that a letter

from FWS, which contained the objectives of a wolf recovery plan, described

FWS' efforts to minimize wolf depradation of livestock, summarized wolf

depradation on Plaintiff's ranch, and described future plans for wolf management,

did not constitute final agency action, as the letter made clear that FWS "was still

in the decision-making process"). Like the letter at issue in *Gordon*, FWS made

clear in the Enhancement Memorandum that the document was not a final

determination and that FWS would "continue to monitor elephant population levels

in Tanzania, progress made by the Government in implementing its management

plan and addressing the strategic objectives identified in that plan, as well as

efforts made to deal with rampant poaching and government corruption that is

negatively affective African elephants in Tanzania" as it makes individualized

enhancement determinations. (DA___, AR 2015 at 003047.)

II.  CITES Requires a Non-Detriment Finding to Be Issued on a Case-by-
     Case Basis and the Non-Detriment Advice Is Not a Final Agency Action

CITES is a 181-nation, multilateral agreement designed to monitor and

regulate international wildlife trade. Convention on International Trade in

Endangered Species of Wild Fauna and Flora, March 3, 1973, T.I.A.S. No. 8249,

27 U.S.T. 1087. CITES requires that for species listed on Appendix I (including

African elephants in Tanzania), trade can only be authorized if FWS issues a

permit *after* finding that "the import will be for purposes which are not detrimental

to the survival of the species involved" and "the specimen is not to be used for

primarily commercial purposes." *Id.* art. III; *see also* 50 C.F.R. § 23.61

("Detrimental activities, depending on the species, could include, among other

things, unsustainable use and any activities that would pose a net harm to the status

of the species in the wild. For Appendix I species, it also includes use or removal

from the wild that results in habitat loss or destruction, interference with recovery

efforts for a species, or stimulation of further trade.").

The plain language of the treaty makes clear that upon application for an

import permit, FWS must make a finding as to whether a specific proposed import

would be detrimental to the species. By definition, a non-detriment finding as to a

particular trophy import cannot be made until an import permit application is

submitted. Thus, the 2014 Non-Detriment Advice that SCI/NRA challenges (which

is an internal agency memorandum clearly labeled as "General Advice" that FWS

can refer to when making individual non-detriment findings) does not constitute

the consummation of the agency's decision-making process with respect to

elephant trophy imports and is not a final agency action. *See, e.g., Village of

Bensenville v. Fed. Aviation Admin.*, 457 F.3d 52, 69 (D.C. Cir. 2006) (holding that

the challenged FAA letter is not a final agency action because the plaintiff "is

required to file a further grant application for approval before the FAA will be

obligated to disburse the funds described" in the letter); *DRG Funding Corp. v.

Sec'y of Hous. & Urban Dev*., 76 F.3d 1212, 1214 (D.C.Cir.1996) (holding that an

agency action is not final if it "'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action'") (*quoting Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

III.   SCI/NRA Had No Reasonable Expectation that Import Permits Would Be Issued Prior to the Issuance of the Enhancement Memorandum and Non-Detriment Advice

SCI/NRA argue that the 2014 Enhancement Memorandum and Non-Detriment Advice make the process more onerous for import permit applicants and therefore constitute final agency actions. Pl.-Appellant's Br. 19. But pursuant to FWS' 1992 special rule for African elephants, the agency has always been required to make an individualized enhancement determination and non-detriment finding before issuing a CITES import permit for elephant trophies from Tanzania – the fact that this standard has been poorly enforced in the past does not create a reasonable expectation of continued lax enforcement by FWS. Indeed, FWS has previously denied applications for elephant trophy import permits for CITES Appendix I elephants from Zambia and Mozambique and there are no other countries – aside from Tanzania – from which CITES Appendix I elephant trophies have been legally imported over the last decade. *See Marcum v. Salazar*, 694 F.3d 123, 129-30 (D.C. Cir. 2012); *Franks v. Salazar*, 816 F. Supp. 2d 49 (D.D.C. 2011).

IV.   <u>The Appeal is Moot Because The Challenged Memoranda Have Been Superseded By More Recent Elephant Conservation Actions</u>

As detailed in FWS' brief (Def.-Appellee's Br. 23-31), this appeal is moot because the 2014 Enhancement Memorandum and Non-Detriment Advice were superseded by the 2015 enhancement memorandum and non-detriment advice, and there is no evidence that any SCI/NRA members killed elephants in 2014 that they have been prohibited from importing. *See Anderson v. Carter*, 802 F.3d 4, 10 (D.C. Cir. 2015) (holding that a case is moot "if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future"). Not only are the 2014 Memoranda directly replaced by the 2015 memoranda, but FWS' 2015 proposed rule to require ESA import permits for all elephant trophies and set a quota on trophy imports (and/or FWS' response to the 2015 petition to uplist the species to endangered) is highly likely to result in a formal change in policy regarding Tanzania elephant trophy imports in the near future. Further, Director's Order No. 212 from 2015 is a binding requirement pertaining to FWS staff evaluation of permit applications, including any applications to import parts of an elephant killed in Tanzania in 2014. Thus, this appeal does not present an actual case or controversy as required by Article III of the U.S. Constitution. U.S. Const. art. III.

## CONCLUSION

Amici therefore urge the Court to affirm the district court ruling and dismiss this appeal.

Respectfully submitted this 11th day of March 2016,

        /s/ Anna Frostic

Anna Frostic
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, DC 20037
Telephone: 202-676-2333
afrostic@humanesociety.org

*Counsel for The Humane Society of the United States, Humane Society International, International Fund for Animal Welfare, and Born Free USA*

**CERTIFICATION OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,738 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. Rule 32(e)(1).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2007 in 14-point Times New Roman font.

Respectfully submitted this 11th day of March 2016,

___/s/ Anna Frostic_____
Anna Frostic
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, DC 20037
Telephone: 202-676-2333
afrostic@humanesociety.org

*Counsel for The Humane Society of the United States, Humane Society International, International Fund for Animal Welfare, and Born Free USA*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the Amicus Brief was electronically filed with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit on March 11, 2016, by utilizing the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Respectfully submitted this 11th day of March 2016,

    /s/ Anna Frostic_____
Anna Frostic
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, DC 20037
Telephone: 202-676-2333
afrostic@humanesociety.org

*Counsel for The Humane Society of the United States, Humane Society International, International Fund for Animal Welfare, and Born Free USA*